Lyons v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-043-CR

     PATRICK DEON LYONS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 19778-CR
                                                                                                    

O P I N I O N
                                                                                                    

      Patrick Deon Lyons was charged by two indictments with the capital murder of Donnie Mason
and the attempted murder of Joey Hargers. See Tex. Penal Code Ann. §§ 15.01, 19.02, 19.03
(Vernon 1994). The jury found him guilty of capital murder and attempted voluntary
manslaughter. This is an appeal from the capital murder conviction. Because the State had
waived death, Lyons was automatically sentenced to life imprisonment. 
      In a single point, Lyons asserts that the evidence is insufficient to support the jury's finding
that he committed capital murder as alleged in the indictment. The indictment alleged that Lyons
murdered Mason "in the course of committing and attempting to commit the offense of robbery
of the said Donnie Mason." Lyons contends that there is no evidence that he murdered Mason in
the course of committing or attempting to commit robbery. We disagree.
      Evidence will sustain a conviction if, viewing it in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560
(1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).
      Bobbie Reed, Mason's sister, testified that on the evening of February 25, 1993, she, Mason
and Lyons were briefly at Lobo's—a drinking and gambling establishment run by Melvin
Williams. Sometime after 10 p.m., she dropped off Mason and Lyons at the home she shared with
her brother before she left for work. Earlier that day, Reed had purchased a VCR for her home. 
      Joey Hargers testified that he had been at Lobo's with Reed and Mason, and that Lyons joined
them. Reed drove Mason and Lyons to her house to babysit her children. Lyons and Mason later
returned to Lobo's and joined Hargers and Joe Jordan. The four men returned to Mason's house
to drink, play dominos and listen to music. Hargers testified that during the evening they tried
to program the VCR. The men stopped playing dominos around 3:30 a.m. and Jordan and Lyons
left. Hargers testified that he and Mason left the house around 4 a.m. to find Lyons. They went
to Lyons' house, but he was not there.
      When Hargers and Mason returned home, the VCR was gone. Hargers stated that he believed
Lyons had taken the VCR. Lyons returned to the house around 4:30 a.m. According to Hargers,
Lyons and Mason began discussing the missing VCR. They moved from the kitchen to a
bedroom. Hargers heard Mason call to him in a feeble voice, "Help me Joey, help me." Hargers
went down the hallway to the entrance of the bedroom. He saw Mason on the floor trying to get
up, drenched in blood, and struggling with Lyons. When Lyons saw Hargers, he walked out of
the bedroom and into the hallway. Hargers put his hands in the air, but Lyons stabbed him in the
abdomen, puncturing his colon and pancreas. Mason rushed by the two men, and Lyons pursued
him into the front of the house. Hargers collapsed on the floor.
      Jeffery Washington testified that he arrived at Mason's house around 5 a.m. Mason, Hargers,
and Lyons were arguing about the missing VCR. According to Washington, Mason threatened
to call the police. Mason and Lyons moved from the kitchen to the bedroom, and Washington
heard "a scuffle like they was fighting or something." Washington then heard Mason call out,
"Joey, Joey, help me, Joey." Hargers went towards the bedroom. Washington heard something
hit the floor—presumably Hargers after he had been stabbed. Mason then came running from the
bedroom toward the front door. Lyons was running behind Mason, stabbing him, saying, "Give
me the money, give me the money, I'm going to kill you." Mason was unable to open the front
door, and Lyons cornered him and continued to stab him.


 Mason finally said, "Okay the money
is in the back." Lyons then grabbed Mason by the hand and took him to the back room. 
Washington left the house.
      Charles Odom, a Dallas County medical examiner, testified that Mason died of multiple stab
wounds. Odom identified between thirty and forty wounds on Mason's body.
      Melvin Williams, the proprietor of Lobos's, testified that Lyons came to him to pawn a VCR
around 4 or 5 a.m. Williams stated that he paid Lyons thirty dollars for the VCR. 
      Lyons testified. He admitted that he had stolen the VCR from Mason's house and pawned
it to Williams for "crack" cocaine. He smoked the crack and returned to Mason's house. He,
Mason, and Hargers argued about the VCR—Lyons denied that he had stolen it. At Mason's
suggestion, he and Mason went to the back bedroom where they sat on the bed arguing. Lyons
then confessed that he had taken the VCR. According to Lyons, Mason had a knife and attacked
him. Lyons grabbed the knife. He testified that he was afraid that Mason would kill him. Lyons
stated that he, Lyons, "went berserk," but only remembered stabbing Mason four times.
      Lyons testified that he had Mason pinned down on the floor. Mason called to Hargers, who
came into the bedroom and jumped onto Lyons' back. To defend himself, Lyons then stabbed
Hargers. Lyons and Mason continued struggling into the living room. Lyons left through the
kitchen door, stopping to take a radio entertainment center off of the kitchen table. He dropped
the radio in a nearby field. Lyons went to his uncle's house and hid in a closet, but surrendered
to police later that day. Lyons denied that he was asking Mason for money when he stabbed him. 
He also stated that the stabbing was not related to his taking the radio entertainment center or the
VCR.
      A person commits capital murder if he intentionally commits murder in the course of
committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault,
arson, or obstruction or retaliation. Tex. Penal Code Ann. § 19.03(a)(2). The indictment
alleged that Lyons murdered Mason "in the course of committing and attempting to commit the
offense of robbery of the said Donnie Mason." A person commits robbery if, in the course of
committing theft and with the intent to obtain or maintain control of property, he intentionally,
knowingly, or recklessly causes bodily injury to another. Id. § 29.02(a)(1) (Vernon 1994). Lyons
contends that there is no evidence he murdered Mason in the course of committing or attempting
to commit robbery.
      Washington testified that Lyons followed Mason from the bedroom and stabbed him at least
fifteen times while saying, "Give me the money, give me the money, I'm going to kill you." 
When Mason finally told Lyons, "Okay the money is in the back," Lyons grabbed Mason and took
him to the back room. Although Lyons denied that his taking of the entertainment center was
related to the stabbing, he admitted that he stole it. The jury, as the trier of facts, is the exclusive
judge of the credibility of the witnesses and the weight to be given to the evidence. Williams v.
State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). It may believe or disbelieve all or any part
of the witnesses' testimony. Id. The jury apparently believed Washington and Hargers, and
disbelieved Lyons.
      Viewing the evidence in the light most favorable to the verdict, any rational trier of fact could
have found beyond a reasonable doubt that Lyons committed the murder in the course of
committing or attempting to commit robbery. See Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89; Matson, 819 S.W.2d at 843. We overrule the point.
      We affirm the judgment.
                                                                                 BILL VANCE
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed May 24, 1995
Do not publish